## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BLUEFIELD DIVISION

| | | |
|---|---|---|
| JOSE ANGEL MARTINEZ-CANTU, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **Civil Action No. 1:15-12961** |
| | ) | |
| UNITED SATES OF AMERICA, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 25), filed on January 8, 2016. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendants' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the Defendants in moving to dismiss. (Document No. 28.) Plaintiff failed to file a Response. Having examined the record and considered the applicable law, the undersigned has concluded that Defendants' Motion should be granted.

### FACTUAL AND PROCEDURAL HISTORY

On June 8, 2015, Plaintiff, acting *pro se* and an inmate at FCI McDowell filed his Application to Proceed Without Prepayment of Fees and Complaint in this matter seeking relief pursuant to the Federal Tort Claims Act [FTCA], 28 U.S.C. §§ 1346(b) and 2671, *et seq.*, and for alleged violations of his constitutional and civil rights pursuant to Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971).[1]

---

[1]   Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v.*

(Document Nos. 1 and 3.) In his Complaint, Plaintiff names the following as defendants: (1) United States of America; (2) Tracey Walters, Registered Nurse; (3) W. Walters, Registered Nurse; (4) Ashley Stark, Physician Assistant; (5) Bart Masters, Warden; (6) Kelly Lucas, Health Services Administrator; and (6) Dr. Isaac Alexis, Clinical Director. (Document No. 3, pp. 1 - 3.) Plaintiff alleges that Defendants acted with negligence and deliberate indifference in diagnosing and providing treatment for injuries he suffered from a fall on or about June 22, 2014. (Id., pp. 5 - 6.) Plaintiff alleges that on June 22, 2014, he was "performing [his] kitchen sanitation job of cleaning the ceramic tiled floor around the ovens that the cooks leave greasy after they prepare the daily meals." (Id., p. 5.) Plaintiff states that "[w]hen [he] swung the half full 5 gallon bucket out in front of [him], [his] right foot slipped from under [him] and [he] fell sideways onto [his] left shoulder, landing so hard on the floor that [his] head bounced on it and [his] left shoulder became dislocated." (Id.) Plaintiff alleges that he immediately "felt a sharp, stabbing pain shoot through [his] left shoulder, neck, back, and the side of [his] head." (Id.) Plaintiff also states that he "blacked out for a moment." (Id.) Plaintiff acknowledges that Correctional Officer Looney, who was the kitchen duty officer, referred him to medical for evaluation. (Id.) Plaintiff alleges that he was evaluated by Registered Nurse ["R.N."] Tracey Walters, who examined his shoulder, gave him a shot for the pain, prescribed Ibuprofen, and provided an arm sling. (Id.) Plaintiff states that he returned to medical the next day complaining of excruciating pain in his shoulder. (Id.) Plaintiff states that he was evaluated by Physician Assistant ["P.A."] Sherri Lilly, who discussed the possibility of x-rays and referral to an outside orthopedic surgeon. (Id., p. 6.) Plaintiff, however, claims that P.A. Lilly did not prepare the order for x-rays or the referral to a specialist on that day.

_Kerner_, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

2

(<u>Id.</u>) Plaintiff further asserts that he requested Ibuprofen for his pain, but R.N. Walters instructed him to buy the medication at the commissary. (<u>Id.</u>) Plaintiff states that he followed R.N. Walters' instruction and was able to buy Ibuprofen from the commissary on three occasions, but his "money did not hold out." (<u>Id.</u>) Plaintiff claims that he was forced to rely on other inmates to buy the Ibuprofen for him. (<u>Id.</u>)

Plaintiff alleges that between June and November, 2014, he attended sick call on three or four occasions seeking treatment for migraine headaches, blurred vision, numbness of shoulder and arm, forgetfulness, and dizziness. (<u>Id.</u>) Plaintiff states that he continued to request Ibuprofen to treat his pain, but "each time [he] was refused any type of treatment and was adamantly told to purchase Ibuprofen from the commissary." (<u>Id.</u>) Plaintiff alleges that these sick call visits were not properly documented in his medical files. (<u>Id.</u>) Plaintiff alleges that he subsequently requested to be referred to an orthopedic surgeon for evaluation, but Health Service Administrator Kelly Lucas and Clinical Director Isaac Alexis denied his request. (<u>Id.</u>)

Plaintiff alleges that he was forced to endure nine months "of excruciating pain, discomfort, insomnia, headaches, throbbing sharpness, numbness, limited functional use of [his] left side, and the inability to work without the benefit of receiving the necessary medical treatment of having [his] left shoulder 'set back in place' and thus, alleviating [his] suffering." (<u>Id.</u>) Plaintiff alleges that Defendants W. Walters, T. Walters, Stark, Lucas, Dr. Alexis, and Masters blatantly refused to provide proper medical treatment. (<u>Id.</u>) Plaintiff contends that Defendants' negligence and deliberate indifference caused him to suffer persistent pain and resulted in a deformity to his shoulder such that "the collar bone protrudes awkwardly upward forming a noticeable hump on the top of [his] shoulder." (<u>Id.</u>) Plaintiff asserts that proper medical treatment to "reset" his

3

shoulder would have prevented the deformity to his shoulder and unnecessary pain and suffering. (Id.) As relief, Plaintiff requests compensatory and punitive damages. (Id., p. 7.)

As Exhibits, Plaintiff attaches the following: (1) A copy of a letter from the BOP dated April 10, 2015, acknowledging receipt of Administrative Claim Number TRT-MXR-2015-03014 (Document No. 3-1, pp. 2 - 3.); (2) A copy of a letter from the BOP dated April 30, 2015, denying Administrative Claim Number TRT-MXR-2015-03014 (Id., pp. 4 - 5, 26.); (3) A copy of Plaintiff's "Request for Administrative Remedy Informal Resolution Form" dated September 27, 2014 (Id., p. 6.); (4) A copy of a "Rejection Notice" from the Administrative Remedy Coordinator at FCI McDowell dated November 5, 2014 (Id., pp. 7 and 9.); (5) A copy of Plaintiff's "Request for Administrative Remedy" dated October 27, 2014 (Id., p. 8.); (6) A copy of Plaintiff's "Regional Administrative Remedy Appeal" dated November 10, 2014 (Id., p. 10.); (7) A copy of Warden Bart Masters Response to Plaintiff's Request for Administrative Remedy dated February 9, 2015 (Id., p. 11.); (8) A copy of Plaintiff's "Regional Administrative Remedy Appeal" dated March 17, 2015 (Id., pp. 12 - 13.); (9) A copy of Regional Director J.F. Caraway's Response to Plaintiff's Regional Appeal dated April 7, 2015 (Id., pp. 14 - 15.); (10) A copy of Plaintiff's "Central Office Administrative Remedy Appeal" dated April 13, 2015 (Id., p. 16.); (11) A copy of Administrator Ian Connors' Response dated August 31, 2015 (Id., p. 18.); (12) A copy of Plaintiff's Response to the BP-11 received on August 15, 2015 (Id., p. 19.); (13) A copy of Plaintiff's Affidavit (Id., pp. 21 - 23.); (14) A copy of Plaintiff's BOP account information regarding all transactions (Id., p. 24.); and (15) A copy of Plaintiff's pertinent medical records (Document No. 5.).

By Order entered on September 17, 2015, United Magistrate Judge R. Clarke VanDervort granted Plaintiff's Application to Proceed Without Prepayment of Fees and directed the Clerk to

issue process.[2] (Document No. 7.) On January 8, 2016, Defendants filed their "Motion to Dismiss, or in the Alternative Motion for Summary Judgment" and Memorandum in Support. (Document Nos. 25 and 26.) First, Defendants argue that Plaintiff's <u>Bivens</u> claim should be dismissed because: (1) "Plaintiff cannot establish a constitutional violation" (Document No. 26, pp. 8 – 13.); (2) "Defendants are entitled to qualified immunity" (<u>Id.</u>, pp. 13 – 15.); (3) "Vicarious liability is inapplicable in a <u>Bivens</u> action" (<u>Id.</u>, pp. 15 – 16.); and (4) "Defendants Lucas is a U.S. Public Health Service Employees and is entitled to absolute immunity." (<u>Id.</u>, pp. 16 – 17.) Next, Defendants argue that Plaintiff's FTCA claim should be dismissed because: (1) "The United States is the only proper Defendant in an FTCA claim" (<u>Id.</u>, pp. 17 - 18.); (2) "Plaintiff's negligence claim against the United States must be dismissed for failure to comply with the West Virginia Medical Professional Liability Act" (<u>Id.</u>, pp. 18 - 21.); and (3) "The Inmate Accident Compensation Act provides the exclusive remedy for Plaintiff's injuries and his medical treatment" (<u>Id.</u>, pp. 21 – 22.)

As Exhibits, Defendants attach the following: (1) The Declaration of Sarah Lilly (Document No. 25-1, pp. 1 - 2.); (2) A copy of Plaintiff's "Claim for Damage, Injury or Date" (Tort Claim No. TRT-MXR-2015-03014) dated March 18, 2015 (<u>Id.</u>, pp. 4 – 10.); (3) A copy of the Tort Claim denial letter dated April 30, 2015 (<u>Id.</u>, pp. 11 - 12.); (4) The Declaration of Dominick McLain, D.O. (<u>Id.</u>, pp. 13 – 15.); (5) A copy of Plaintiff's pertinent medical records (<u>Id.</u>, pp. 17 – 120.); and (6) The Declaration of Kelly Lucas (<u>Id.</u>, p. 121.).

---

[2] By Standing Order, this matter was referred to United States Magistrate Judge R. Clarke VanDervort for submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 6.) By Order entered on January 6, 2016, the above case was referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and a recommendation for deposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 24.)

Notice pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on January 11, 2016, advising him of the right to file a response to the Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment." (Document No. 28.) Plaintiff failed to file a Response.

**<u>FACTUAL HISTORY</u>**

Based upon a review of Plaintiff's medical records, Plaintiff reported to Health Services at FCI McDowell on June 22, 2014, stating that he slipped and fell on the wet floor while mopping in the kitchen. (Document No. 25-1, pp. 22 – 26.) Plaintiff claimed that he had "pain in [his] shoulder" and "hit [his] head." (<u>Id.</u>) Plaintiff rated his pain as a 10 on a pain scale of 1 to 10. (<u>Id.</u>) Plaintiff was evaluated by R.N. Tracey Walters, who noted that Plaintiff had a superficial abrasion to his left forehead, swelling to his left shoulder, shoulders are symmetric, decreased range of motion to left shoulder, no crepitus, radial pulses were equal and strong bilaterally, and neurovascular was within normal limits. (<u>Id.</u>) R.N. Tracey Walters noted that after consulting with P.A. William Goode, Plaintiff's left arm was placed in a sling, a Toradol injection was administered, and x-rays were ordered. (<u>Id.</u>) R.N. Tracey Walters directed Plaintiff to returned to Health Services the next day for x-rays and follow-up at sick call as needed. (<u>Id.</u>)

On June 23, 2014, Plaintiff reported to Health Services for a follow-up on his injuries. (<u>Id.</u>, pp. 19 – 21.) Plaintiff continued to complain of shoulder pain. (<u>Id.</u>) Plaintiff was examined by P.A. Sherri Lilly, who noted swelling, inflammation, tenderness, and a decreased range of active motion in Plaintiff's left shoulder. (<u>Id.</u>) P.A. Lilly noted that neurovascular was intact. (<u>Id.</u>) P.A. Lilly noted that she was awaiting the final radiology report, but the preliminary results indicated a possible AC separation and possible left shoulder dislocation. (<u>Id.</u>) P.A. Lilly prescribed Ibuprofen

6

800 mgs for pain. (Id.) P.A. Lilly instructed Plaintiff to continue to use the arm sling, follow-up at sick call the following day "or return to health services if left shoulder pain increases or if he noticed any skin discoloration, upper extremity becomes cold to touch, or he experiences any numbness of the left upper extremity." (Id.) Later that day, P.A. Lilly received the final x-ray report revealing the following: "Positive. New separation of the AC joint with superior displacement of distal clavicle when compared to the chest x-ray of March 2014. Space between coracoid and clavicle also widened consistent with trauma to ligament. No fracture seen." (Id., pp. 18 and 49.) On the same day, P.A. Lilly submitted a consultation request for referral to an orthopedic surgeon. (Id.) On June 27, 2014, P.A. Goode renewed Plaintiff's prescription for Ibuprofen 800 mg for pain relief. (Id., p. 17.) On June 29, 2014 and July 13, 2014, Medical Duty Status Reports were issued restricting Plaintiff from "all sport" and "no work duty." (Id., pp. 45 - 46.)

On July 31, 2014, the Utilization Review Committee ["URC"] that included of Health Services Administrator ["HAS"] Kelly Lucas and Clinical Director Isaac Alexis considered and denied the referral request to an orthopedic surgeon. (Id., p. 48.) The URC explained that the referral request was denied because "the benefit of the referral may not be achieved, and/or, [Plaintiff's] condition can be maintained in-house." (Id.) The URC further stated that "[t]his does not mean that [Plaintiff] do[es] not have a legitimate medication condition" and "does not mean that [Plaintiff's] condition may not warrant a future referral to the community." (Id.) Plaintiff was instructed to "[r]eport to sick call triage for an appointment." (Id.) On November 18, 2014, Plaintiff reported on Health Services for a follow-up appointment complaining of continued left shoulder pain and stating that his symptoms have not improved. (Id., pp. 73 – 75.) P.A. Goode examined Plaintiff noting neurovascular intact, joint deformity, tenderness, and decreased range of active

and passive motion. (Id.) P.A. Goode submitted another consultation request for referral to an orthopedic surgeon. (Id.) P.A. Goode instructed Plaintiff to return immediately if his condition worsens and to follow-up at sick call as needed. (Id.) On December 18, 2014, the URC including HSA Lucas and Acting Clinical Director Jorge Vazquez-Velazquez approved the request for a referral to an orthopedic surgeon. (Id., p. 119.)

On February 3, 2015, Plaintiff was evaluated by Dr. Azzo, an outside orthopedic surgeon. (Id., pp. 112 – 116.) Dr. Azzo recommended an open reduction internal fixation and distal clavicle excision with reconstruction. (Id.) On the same day, Plaintiff was evaluated by R.N. Tracey Walters for a Medical Trip Return Encounter. (Id., pp. 70 – 71.) R.N. Tracey Walters noted that there was "no paperwork [from Dr. Azzo] with inmate." (Id.) On February 6, 2015, P.A. Goode noted that he was in receipt of Dr. Azzo's report that recommended surgery. (Id., p. 69.) The same day, P.A. Goode submitted a consult request for orthopedic surgery. (Id.) On February 27, 2015, P.A. Stark submitted a second consult request for orthopedic surgery. (Id., p. 67.) On March 9, 2015, Dr. Azzo performed surgery on Plaintiff's left shoulder and Plaintiff was returned to FCI McDowell the same day. (Id., pp. 63 – 65, 101 - 106.) Upon returning to FCI McDowell, Plaintiff was examined by P.A. Stark. (Id.) P.A. Stark prescribed Cephalexin 500 mgs and Acetaminophen/Codeine 300 mgs (Tylenol 3) for pain control. (Id.) On March 11, 2015, R.N. W. Walters changed Plaintiff's dressings and P.A. Stark prescribed Ibuprofen 800 mgs "as need for pain in between Tylenol 3." (Id., pp. 59 - 62.) On March 19, 2015, P.A. Stark renewed Plaintiff's prescription for Ibuprofen 800 mgs. (Id., p. 57.) On March 24, 2015, Plaintiff had his post-operative examination with Dr. Azzo. (Id., pp. 93 - 97.) Upon examination, Dr. Azzo noted that Plaintiff was doing well with AC separation. (Id.) Dr. Azzo recommended that Plaintiff start

physical therapy through self-exercises. (Id.) On the same day, Plaintiff was evaluated by P.A. Chandra Carothers. (Id., pp. 54 – 56) P.A. Carothers renewed Plaintiff's prescription for Ibuprofen 800 mgs and instructed him to follow-up at sick call as needed. (Id.)

## THE STANDARD

### Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

### Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's

claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. <u>Matsushita</u>, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. <u>Celotex</u>, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## **DISCUSSION**

1.    **Bivens Claim:**

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." <u>Turner v. Safley</u>, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). A <u>Bivens</u> action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. <u>See</u> <u>Bivens v. Six Unknown Named Agents of the Fed.</u> <u>Bureau of Narcotics</u>, 403 U.S. at 395-97, 91 S.Ct. at 2004-05; <u>See also</u> <u>Carlson v. Green</u>, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending <u>Bivens</u> to Eighth Amendment claims); <u>Davis v. Passman</u>, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979)(extending <u>Bivens</u> to allow citizen's recovery of damages resulting from a federal agent's violation of the Due

Process Clause of the Fifth Amendment.) A <u>Bivens</u> action is the federal counterpart of an action

under 42 U.S.C. § 1983. An action for money damages may be brought against federal agents

acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof

of causation between the official's conduct and the alleged injury is necessary for there to be

liability. A plaintiff asserting a claim under <u>Bivens</u> must show the violation of a valid constitutional

right by a person acting under color of federal law.[3] The United States Supreme Court has held

that an inmate may name a federal officer in an individual capacity as a defendant in alleging an

Eighth Amendment constitutional violation pursuant to <u>Bivens</u>. <u>See</u> <u>Wilson v. Seiter</u>, 501 U.S.

294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). However, <u>Bivens</u> claims are not actionable against

the United States, federal agencies, or public officials acting in their official capacities. <u>See</u> <u>FDIC</u>

<u>v. Meyer</u>, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308 (1994); <u>Berger v. Pierce</u>,

933 F.2d 393, 397 (6th Cir. 1991); <u>Reinbold v. Evers</u>, 187 F.3d 348, 355 n. 7 (4th Cir. 1999).

### A. Defendant Lucas is entitled to absolute immunity.

In Defendants' Motion, Defendant Lucas argues that she is a United States Public Health

---

[3] Inmates may file claims of liability against the United States under the FTCA but may not assert claims of personal liability against prison officials for violations of their constitutional rights. *Carlson v. Green*, 446 U.S. at 21-23, 100 S.Ct. at 1472 -74. By contrast, under *Bivens* inmates may assert claims of personal liability against individual prison officials for violations of their constitutional rights but may not assert claims against the government or prison officials in their official capacities. The Supreme Court held in *Carlson*, 446 U.S. at 18 - 21, 100 S.Ct. at 1471-72, that an inmate could pursue a *Bivens* action independent of a FTCA action. The Court found that Congress did not intend to pre-empt a *Bivens* remedy when it enacted the FTCA. *Id.* The Court noted that the legislative history of the FTCA "made it crystal clear that Congress views FTCA and *Bivens* as parallel, complementary causes of action." *Id.*, 446 U.S. at 19 - 20, 100 S.Ct. at 1471 -72. Relying upon *Carlson*, the Fourth Circuit found that the availability of relief under the FTCA does not automatically foreclose a *Bivens* action. *Dunbar Corp v. Lindsey*, 905 F.2d 754, 762 (4th Cir. 1990). The Court pointed out other distinctions between FTCA and *Bivens* actions in *Dunbar Corp.*: (1) only compensatory damages are available in FTCA actions, whereas compensatory and punitive damages are available under *Bivens* and (2) FTCA claims must be tried to the Court, whereas *Bivens* claims may be tried to a jury. *Id.*

Service Employees and is entitled to absolute immunity. (Document No. 26, pp. 16 – 17.) In support, Defendant Lucas attaches her Declaration stating as follows: "I am a Commissioned Officer in the United States Public Health Service, and have been such at all times relevant to this case. (Document No. 25-1.) Plaintiff failed to file a Response to Defendants' Motion.

> Title 42 U.S.C. § 233(a) provides as follows:
>
> The remedy against the United States provided by sections 1346(b) and 2672 of Title 28 . . . for damages for personal injury, including death, resulting from the performance of medical, surgical, dental or related functions, including the conduct of clinical studies or investigation, by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment, shall be exclusive of any other civil action or proceeding by reason of the same subject-matter against the officer or employee . . . whose act or omission gave rise to the claim.

Thus, Congress made proceedings under the Federal Tort Claims Act the sole avenue to seek relief against a Public Health Service employee for injuries resulting from the employee's performance of medical functions within the scope of his or her employment. The United States Supreme Court has held that "[t]he immunity provided by § 233(a) precludes *Bivens* actions against individual [Public Health Service] officers or employees for harms arising out of constitutional violations committed while acting within the scope of their office or employment." Hui v. Castaneda, 559 U.S. 799, 130 S.Ct. 1845, 1847, 176 L.Ed.2d 703 (2010)(stating that Section 233(a) "plainly precludes a *Bivens* action against petitioners by limiting recovery for harms arising from the conduct at issue to an FTCA action against the United States.") Defendant Lucas holds the position of the Health Services Administrator at FCI McDowell. Thus, Plaintiff alleges that Defendant Lucas is responsible for failing to ensure that he was provided appropriate medical care. Defendant Lucas was clearly acting within the scope of her employment when performing functions pertinent to her position, such as her administrative oversight and supervision of the Health Services

Department. Based on the foregoing, the Court finds that Defendant Lucas was a Commissioned Officer in the United States Public Health Service during the time period relevant to this Complaint and has absolute immunity from suit for all claims arising from the medical care provided to Plaintiff. The Court, therefore, respectfully recommends that Defendant Lucas' "Motion to Dismiss, or in the Alternative Motion for Summary Judgment" be granted. The undersigned finds it unnecessary to consider the other reasons which Defendant Lucas has submitted for dismissal as to Plaintiff's <u>Bivens</u> claim.

### B. Plaintiff's claims against Defendant Masters.

In his Complaint, Plaintiff appears to contend that Defendant Masters violated his constitutional rights by failing to ensure that he received proper medical treatment. (Document No. 3.) In Defendants' Motion, Defendant Masters contends "[h]is supervisory position and the general notion that he is responsible for the actions of their subordinates is simply insufficient to form the basis of a claim for violations of a constitutional right, and he must be dismissed from this action." (Document No. 26, pp. 15 - 16.) First, Defendant Masters argues that he "did not provide medical care to inmates and was not directly involved in the medical care of inmates." (<u>Id.</u>, p. 15.) Next, Defendant Masters contends that "Plaintiff fails to show that Defendants Masters had direct involvement in any subordinate's unconstitutional actions." (<u>Id.</u>) Finally, Defendant Masters argues that he should be dismissed because Plaintiff names him as a defendant based upon his supervisory position as Warden. (<u>Id.</u>) Plaintiff failed to file a Response to Defendants' Motion.

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." <u>Ashcroft v. Iqbal</u>, 129 S.Ct. at 1948("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead

that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); Also see Monell v. Department of Social Services of the City of NY, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Liability, however, may attach to a supervisory official if "conduct directly causing the deprivation was done to effectuate an official policy or custom for which [the official] could be liable." Fisher v. Washington Metro. Area Transit Auth., 690 F.2d 1133, 1142-43 (4th Cir. 1982), *abrogated on other grounds by* County of Riverside v. McLaughlin, 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). Further, supervisory officials may be liable for acts of their subordinates where "supervisory indifference or tacit authorization of subordinates' misconduct may be a causative fact in the constitutional injuries they inflict on those committed to their care." Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984). Thus, the inquiry for the Court is whether the Defendants individually "acted wantonly, obdurately, or with deliberate indifference to the pervasive risk of harm." Moore v. Winebrenner, 927 F.2d 1312, 1315 (4th Cir. 1991).

Defendant Masters argues that Plaintiff has failed to demonstrate how he was personally involved in violating any of Plaintiff's constitutional rights. Essentially, Plaintiff alleges that Defendant Masters violated his constitutional rights with respect to his failure to supervise employees and in responding to his administrative remedy. The evidence of record reveals that Defendant Masters responded to an Administrative Remedy Request submitted by Plaintiff. (Document No. 3-1, p. 11.) The dismissal of a non-medical defendant, however, is appropriate where the defendant's sole involvement is the denial of an administrative remedy request. See Fellove v. Heady, 2008 WL 196420 *4 (N.D.W.Va. Jan. 22, 2008)(stating that "to the extent that the plaintiff may be asserting that these defendants were deliberately indifferent to his needs by

denying his administrative grievances, that claim is also without merit as this is not the type of personal involvement required to state *Bivens* claim"); Mabry v. Ramirez, 2007 WL 4190398 *6 (N.D.W.Va. Nov. 21, 2007)(holding that "denying a prisoner's institutional grievance is not the type of personal involvement required to state a *Bivens* claim for deliberate indifference to serious medical needs"); Paige v. Kupec, 2003 WL 23274357 *1 (D.Md. March 31, 2003), aff'd, 70 Fed. Appx. 147 (4th Cir. 2003)(finding that the warden should be dismissed where the only claim against the warden concerned his dismissal of plaintiff's administrative remedy). In order to succeed on a medical claim against non-medical personnel, plaintiff must establish that non-medical personnel were personally involved in a denial of treatment, deliberately interfered with treatment, or tacitly authorized or were indifferent to a prison physician's conduct. Lewis v. Angelone, 926 F. Supp. 69, 73 (W.D.Va. 1996). Furthermore, non-medical prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. Miltier v. Born, 896 F.2d 848, 854 - 55 (4th Cir. 1990). The undersigned finds there is no evidence that Defendant Masters was personally involved in a denial of treatment to Plaintiff, deliberately interfered with Plaintiff's treatment, or tacitly authorized the medical staffs' conduct. Accordingly, the Court therefore finds that Defendant Masters' "Motion to Dismiss, or in the Alternative Motion for Summary Judgment" should be granted as to Plaintiff's Bivens claim. The undersigned finds it unnecessary to consider the other reasons which Defendant Masters has submitted for dismissal of Plaintiff's Bivens claim.

**C.    No evidence of deliberate indifference by individual Defendants.**

Under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds*, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447

(1979). See also Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994)(Supreme Court noted that Eighth Amendment imposes certain duties upon prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"), quoting Hudson v. Palmer, 468 U.S. 517, 526 - 27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984)); Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)(Court held that only those conditions depriving inmates of "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation). Sentenced prisoners are therefore constitutionally guaranteed adequate medical care under the Eighth Amendment.

To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege and prove (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297 - 99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities.'" Id. at 298, 111 S.Ct. 2321 (citing Rhodes v. Chapman, 452 U.S. at 347, 101 S.Ct. 2392)."In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements – that 'the deprivation of [a] basic human need was objectively sufficiently serious,' and that 'subjectively the officials act[ed] with a sufficiently culpable state of mind.'" Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995)(quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993)(quotation omitted)). See also White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1991)("In *Strickler*, we held that a prisoner must suffer 'serious or significant physical or mental

injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth

Amendment.") A medical need serious enough to give rise to an Eighth Amendment claim

involves a condition which places an inmate at substantial risk of serious harm, usually loss of life

or permanent disability, or a condition for which lack of treatment causes continuous severe pain.

The Fourth Circuit stated the applicable standard in <u>Miltier v. Beorn</u>, 896 F.2d 848, 851 - 852 (4th

Cir. 1990), as follows:

> To establish that a health care provider's actions constitute deliberate indifference
> to a serious medical need, the treatment must be so grossly incompetent, inadequate
> or excessive as to shock the conscience or to be intolerable to fundamental fairness.
> * * * Deliberate indifference may be demonstrated by either actual intent or reckless
> disregard. * * * A defendant acts recklessly by disregarding a substantial risk of
> danger that is either known to the defendant or which would be apparent to a
> reasonable person in the defendant's position. * * * Nevertheless, mere negligence
> or malpractice does not violate the eighth amendment. (Citations omitted)

See also <u>Sosebee v. Murphy</u>, 797 F.2d 179, 183 (4th Cir. 1986)(Facts indicating that guards were

aware that inmate's condition had worsened and was life-threatening and intentionally ignored the

situation and refused to seek medical assistance provided a reasonable basis for finding deliberate

indifference to inmate's medical needs.); <u>Loe v. Armistead</u>, 582 F.2d 1291 (4th Cir. 1978), <u>cert.

denied</u>, 446 U.S. 928, 100 S.Ct. 1865, 64 L.Ed.2d 281 (1980)(Pretrial detainee's allegations of

delay in treatment of his broken arm indicated a reasonable basis for inferring deliberate

indifference to his serious medical needs.); <u>Russell v. Sheffer</u>, 528 F.2d 318 (4th Cir.

1975)(Summary judgment for defendants affirmed where claim that inmate received

constitutionally inadequate medical treatment involved a question of medical judgment not subject

to judicial review.) Therefore, Plaintiff must first allege and eventually establish a "sufficiently

serious" deprivation of adequate medical care and resulting "serious or significant physical or

mental injury" in order to maintain and prevail upon his Eighth Amendment claim. Second, to

establish the subjective component of deliberate indifference, Plaintiff must allege and prove each defendant's consciousness of the risk of harm to him. See Farmer, *supra*, 511 U.S. at 840, 114 S.Ct. at 1980. In particular, Plaintiff must establish that each Defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, *supra*, 511 U.S. at 837, 114 S.Ct. at 1979. Plaintiff in this case must therefore allege and establish that each Defendant was aware that he was receiving constitutionally inadequate medical care and disregarded the serious physical consequences.

Plaintiff alleges that Defendants T. Walters, W. Walters, Stark, and Alexis acted with deliberate indifference in diagnosing and providing treatment for his shoulder, back, neck, and head injuries. For purposes of an Eighth Amendment claim, a medical need is serious if it involves a condition which places an inmate at substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment causes continuous severe pain. Plaintiff alleges that his condition caused continuous pain and suffering. Accordingly, the undersigned will assume for purposes of this motion that Plaintiff's injuries were serious enough to give rise to an Eighth Amendment claim.

Next, the undersigned will consider whether Defendants T. Walters, W. Walters, Stark, and Alexis acted with deliberate indifference to Plaintiff's health and safety under a subjective standard. To satisfy the subjective component, Plaintiff must allege each Defendant's consciousness of the risk of harm to him. See Farmer, supra, 511 U.S. at 840, 114 S.Ct. at 1980. Plaintiff contends that Defendants acted with deliberate indifference in failing to timely diagnosis and treat his shoulder, head, neck, and back injuries. Plaintiff alleges that he suffered injuries as a

result of a slip and fall on June 22, 2014. (Document No. 3.) On the same day, Plaintiff was evaluated by Defendant T. Walters, who noted that Plaintiff's shoulders were symmetric, a decreased range of motion to the left shoulder, no crepitus, radial pulses were equal and strong bilaterally, and neurovascular was within normal limits. (Document No. 25-1, pp. 22 – 26.) Only a superficial abrasion was noted to Plaintiff's forehead. (Id.) After consulting with P.A. Goode, Defendant T. Walters placed Plaintiff's arm in a sling, administered a Toradol injection, and ordered x-rays. (Id.) The following day on June 23, 2014, x-rays were conducted and Plaintiff was evaluated by P.A. Lilly for a follow-up on his shoulder injury. (Id., pp. 18 - 21 and 49.) P.A. Lilly examined Plaintiff and noted that the preliminary radiology results indicated possible AC separation and possible left shoulder dislocation. (Id.) P.A. Lilly prescribed Ibuprofen 800 mgs for pain and instructed Plaintiff to continue to use the arm sling. (Id.) The final x-ray report was available on June 23, 2014, which was positive for new separation of the AC joint with superior displacement of distal clavicle. (Id., pp. 18 and 49.) On the same day, P.A. Lilly submitted a consultation request for referral to an orthopedic surgeon. (Id.) Approximately one month later, the URC considered and denied P.A. Lilly's referral request for Plaintiff to be evaluated by an orthopedic surgeon. (Id., p. 48.)

On November 18, 2014, Plaintiff reported on Health Services for a follow-up appointment complaining of continued left shoulder pain and stating that his symptoms had not improved. (Id., pp. 73 – 75.) P.A. Goode examined Plaintiff and submitted another consultation request for referral to an orthopedic surgeon. (Id.) One month later on December 18, 2014, the URC approved the request for a referral to an orthopedic surgeon. (Id., p. 119.) On February 3, 2015, Plaintiff was evaluated by Dr. Azzo, who recommended an open reduction internal fixation and distal clavicle

excision with reconstruction. (Id., pp. 112 – 116.) On the same day, Plaintiff was evaluated by Defendant T. Walters for a Medical Trip Return Encounter who noted that there was "no paperwork [from Dr. Azzo] with inmate." (Id., pp. 70 – 71.) Three days later, P.A. Goode received Dr. Azzo's report and P.A. Goode submitted a consult request for orthopedic surgery. (Id., p. 69.) On February 27, 2015, Defendant Stark submitted a second consult request for orthopedic surgery. (Id., p. 67.) Dr. Azzo performed surgery on Plaintiff's left shoulder on March 9, 2015, approximately one month after Dr. Azzo recommended surgery. (Id., pp. 63 – 65, 101 - 106.) Upon returning to FCI McDowell, Defendant Stark examined Plaintiff and prescribed Cephalexin 500 mgs and Acetaminophen/Codeine 300 mgs (Tylenol 3) for pain control. (Id.) On March 11, 2015, Defendant W. Walters changed Plaintiff's dressings and Defendant Stark prescribed Ibuprofen 800 mgs "as need for pain in between Tylenol 3." (Id., pp. 59 - 62.) Approximately one week later on March 19, 2015, Defendant Stark renewed Plaintiff's prescription for Ibuprofen 800 mgs. (Id., p. 57.) On March 24, 2015, Dr. Azzo evaluated Plaintiff for his post-operative examination and recommended that Plaintiff start physical therapy through self-exercises. (Id., pp. 93 - 97.) On the same day, P.A. Carothers evaluated Plaintiff, renewed Plaintiff's prescription for Ibuprofen 800 mgs, and instructed him to follow-up at sick call as needed. (Id., pp. 54 – 56.)

Based upon the foregoing, Plaintiff cannot satisfy the subjective component. The Court finds that Defendants did not act with deliberate indifferent in providing medical treatment for Plaintiff's shoulder, head, neck and back injuries. First, the undersigned will consider Plaintiff's claim regarding injuries to his head, neck and back. The record is void of any evidence that Plaintiff suffered any injury to his neck and back. Concerning Plaintiff's head injury, the record merely indicates that Plaintiff had a superficial abrasion to his forehead following his slip and fall.

Plaintiff, however, failed to report any further complaints to Defendants regarding his alleged head injury. Accordingly, there is no evidence that Defendants acted with deliberate indifference concerning alleged injuries to Plaintiff's head, neck, and back.

Second, the undersigned will consider Plaintiff's claim regarding his shoulder injury. The record reveals that Defendants evaluated Plaintiff and provided treatment following each sick-call request. Defendants consistently evaluated Plaintiff's condition, ordered x-rays, submitted consult requests for referral to an orthopedist, and prescribed medications. Regarding Plaintiff's allegations concerning the performance of x-rays and a referral to an orthopedist, a review of the medical records reveal that both were completed the day following Plaintiff's injury. Although the consult request for a referral to an orthopedist was initial denied, the URC explained that Plaintiff's condition could be maintained in-house and Plaintiff was instructed to "[r]eport to sick call triage for an appointment." (Id.) Even though Plaintiff alleges that he attended sick call on three to four occasions between June and November, 2014, the record does not support Plaintiff's claim.[4] A review of Plaintiff's medical records reveal that the consult request was denied by the URC on July 31, 2014, and Plaintiff did not present to Health Services for a follow-up appointment until November 18, 2014. Upon presenting to Health Services on November 18, 2014, a second consult request for a referral to an orthopedic surgeon was submitted and subsequently granted on December 18, 2014. Defendants scheduled Plaintiff an appointment with Dr. Azzo and Plaintiff was evaluated on February 3, 2015. Thus, there is no evidence that Defendants or medical staff at

---

[4]   The undersigned has thoroughly reviewed all medical records submitted by Plaintiff and the Defendants. There is no indication that Plaintiff sought medical treatment between June and November, 2014. The Court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002)(citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

FCI McDowell knowingly disregarded Plaintiff's need for x-rays and an evaluation by an orthopedist. Further, Plaintiff's surgery occurred approximately one month after Dr. Azzo recommended such. Concerning Plaintiff's complaint that he was denied pain medication, the record clearly reveals that pain medications were consistently provided to Plaintiff. Thus, the record reveals that Defendants made sufficient efforts to diagnose and treat Plaintiff's shoulder injury. Plaintiff appears to simply disagree with the appropriate course of treatment. An inmate's disagreement with his medical care or the course of treatment for an objectively serious medical injury generally will not constitute a sufficient basis for a constitutional claim. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). "[T]he Fourth Circuit has observed that an inmate's treatment may be limited to what is medically necessary as opposed to 'that which may be considered merely desirable' to the inmate." Malcomb v. Raja, 2010 WL 3812354, at * 1 - 2 (S.D.W.Va. Sept. 22, 2010)(quoting Bowring v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977)(finding that plaintiff was provided medication for his pain and "Defendants' decision to provide plaintiff with one medication over another does not give rise to a constitutional violation.") Accordingly, the undersigned finds that Defendants T. Walters, W. Walters, Stark, and Alexis did not act with deliberate indifference in providing medical treatment for Plaintiff's condition. The undersigned finds it unnecessary to consider the other reasons which the Defendants have submitted for dismissal regarding Plaintiff's Bivens claim.

**2.    FTCA Claim:**

**A.    The United States as a Party.**

In its Motion, the United States argues that the individual Defendants should be dismissed as to Plaintiff's FTCA claim and the United States substituted as the Defendant. (Document Nos.

22

25 and 26.) Plaintiff failed to file a Response.

The Federal Tort Claims Act [FTCA], 28 U.S.C. § 1346(b)(1) and 28 U.S.C. § 2671, *et seq.*, authorizes suits against the United States for damages for injuries or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States while acting within the scope of his or her office or employment under circumstances where the United States, if a private person, would be liable in accordance with the law of the place where the act or omission occurred. The FTCA provides at 28 U.S.C. § 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

Inmates may file claims of liability against the United States but may not assert claims of personal liability against prison officials for violations of their constitutional rights under the FTCA. Carlson v. Green, 446 U.S. 14, 21 - 23, 100 S.Ct. 1468, 1472 -74, 64 L.Ed.2d 15 (1980). Accordingly, the undersigned recommends that the individual Defendants should be dismissed as to Plaintiff's FTCA claim and the United States substituted as the Defendant.

**B.      Failure to satisfy the requirements of the MPLA.**

An inmate "can sue under the FTCA to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). The FTCA provides at § 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for

punitive damages.

The FTCA, however, does not create a new cause of action. <u>Medina v. United States</u>, 259 F.3d 220, 223 (4th Cir. 2001). The statute merely "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." <u>Id.</u>

In the present case, Plaintiff alleges that Defendants' negligent acts occurred in the State of West Virginia. Accordingly, West Virginia State law applies. Under West Virginia law, a plaintiff must satisfy certain prerequisites prior to filing suit against a health care provider. Specifically, a plaintiff must serve each defendant health care provider with a notice of claim with an attached screening certificate of merit executed under oath by a health care provider qualified as an expert under the West Virginia Rules of Evidence at least thirty (30) days prior to filing suit. W. Va. Code § 55-7B-6.[5] Compliance with West Virginia Code § 55-7B-6 is mandatory prior to

---

[5]   West Virginia Code § 55-7B-6 provides the following in pertinent part:

> (a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying the provisions of this section.

> (b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest

24

filing suit in federal court. Stanley v. United States, 321 F.Supp.2d 805, 806-07 (N.D.W.Va. 2004); also see Starns v. United States, 923 F.2d 34 (4th Cir. 1991)(holding that Virginia's medical malpractice liability cap applies to claims brought against the United States under the FTCA). West Virginia Code § 55-7B-6(c), however, provides that no screening certificate of merit is necessary where "the cause of action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care."

Plaintiff alleges that Defendants acted with negligence in diagnosing and providing medical treatment for his shoulder injury. In its Motion, the United States contends that Plaintiff's claim should be dismissed because he failed to timely and properly file a notice of claim and a screening certificate of merit pursuant to the MPLA. (Document No. 18, pp. 18 - 21.) Plaintiff failed to file a Response.

Under West Virginia law, "[i]t is the general rule that in medical malpractice cases, negligence or want of professional skill can be proved only by expert witnesses." Syllabus Point 2, Roberts v. Gale, 149 W.Va. 166, 139 S.Ed.2d 272 (1964). Expert testimony, however, is not required "where the lack of care or want of skill is so gross as to be apparent, or the alleged breach relates to noncomplex matters of diagnosis and treatment within the understanding of lay jurors by resort to common knowledge and experience." Farley v. Shook, 218 W.Va. 680, 629 S.E.2d 739 (2006). The MPLA provides as follows concerning claims "based upon a well-established legal theory of liability":

> Notwithstanding any provision of this code, if a claimant or his or her counsel,
> believes that no screening certificate of merit is necessary because the cause of

---

in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of Rule 15 of the Rules of Civil Procedure.

> action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care, the claimant or his or her counsel, shall file a statement specifically setting forth the basis of the alleged liability of the health care provider in lieu of a screening certificate of merit.

West Virginia Code § 55-7B-6(c). In <u>Johnson v. United States</u>, 394 F.Supp.2d 854, 858 (S.D.W.Va. 2005), the Court held that plaintiff's statement on his administrative claim form alleging improper surgical implantation of a prosthesis satisfied the provisions of the MPLA permitting the filing of a claim without submitting a certificate of merit. <u>Id.</u> The Court reasoned that plaintiff's claim was based upon a well-established legal theory of liability and expert testimony was not required to show a breach of the standard of care because plaintiff stated on his form that the surgeon "implanted the too large Prosthesis backward causing diminished bloodflow and subsequent Necrosis and infection." <u>Id.</u> at 858.

Unlike the facts in <u>Johnson</u>, Plaintiff's allegations of negligence are complex and expert testimony is necessary. <u>See</u> <u>O'Neil v. United States</u>, 2008 WL 906470 (S.D.W.Va. Mar. 31, 2008)(finding that plaintiff was not excused from filing a screening certificate of merit because the treatment and diagnosis of Graves disease, hyperthyroidism, congestive heart failure, and cardiomyopathy, are not within the understanding of lay jurors by resort to common knowledge and experience); <u>also see</u> <u>Giambalvo v. United States</u>, 2012 WL 984277 * 4 (N.D.W.Va. March 22, 2012)(finding that *Johnson* "is a rare exception to 'the general rule that in medical malpractice cases negligence or want of professional skill can be proved only by expert witnesses.'"). In the instant case, it appears that Defendants examined Plaintiff's shoulder, provided an arm sling, ordered x-rays, prescribed pain medications, and referred Plaintiff to a specialist evaluation and surgery. Plaintiff, however, contends that Defendants provided inadequate and delayed treatment,

which resulted in him suffering unnecessary pain and an alleged deformity to his shoulder. Expert testimony is necessary to support a finding that the medical treatment provided by Defendants fell below the applicable standard of care. Plaintiff's medical records reveal that Plaintiff suffered from a separation of the AC joint with superior displacement of the distal clavicle. The undersigned finds that what constitutes timely treatment, risk factors, symptoms, and appropriate treatment options[6] for the above conditions are not within the understanding of lay jurors by resort to common knowledge and experience. See Shepherd v. Blocker, 2015 WL 106371 (S.D.W.Va. Jan. 7, 2015)(adopting report and recommendation finding that expert testimony was necessary for a medical negligence claim regarding an avulsion fracture, partial tear of the proximal aspect of the lateral collateral ligament, and posterolateral rotary instability of the knee). Accordingly, Plaintiff is not excused from filing a screening certificate of merit pursuant to West Virginia Code § 55-7B-6(c). Furthermore, the undersigned finds that Plaintiff failed to file a statement setting forth the basis of liability in lieu of the certification of merit or a notice of claim prior to initiating the above action. The undersigned, therefore, recommends that the United States' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" be granted. The undersigned finds it unnecessary to consider the other reasons which the United States has submitted for dismissal.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 25), **DISMISS** Plaintiff's Complaint (Document No. 3), and remove this matter from the Court's

---

[6]   Specifically, whether the above conditions could be treated conservatory by medical staff within the prison.

docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Faber and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: July 28, 2016.

Omar J. Aboulhosn
United States Magistrate Judge